The opinion of the Court was delivered by
Dargan, Ch.
This Court does not differ from the Chancellor who tried the cause, in his exposition of the principles which have a bearing on the question involved in this appeal. These he has correctly and lucidly explained. But in his application of these principles to the facts of the case, this Court is of the opinion that an error has been committed.
The bare lapse of twenty years from the time a bond or other specialty becomes payable, without acknowledgment of the continuance of the obligation, partial payment, or other rebutting circumstance, raises a presumption of payment, which operates as fully in discharge of the debt, as proof of actual payment and satisfaction. It is a presumption of fact, which unrepelled, is as obligatory upon the Court, as a presumption of law. It stands in the place of belief, and its force cannot be superseded, but by the proof of facts tantamount to a distinct admission of the existence of the debt within the twenty years. A period less than twenty years, aided by strong corroborative circumstances, has been considered sufficient to raise the presumption of payment. The authorities cited by the Chancellor in his circuit decree, most abundantly sustain these general propositions. A citation of similar authorities might be greatly extended. Indeed, these principles of law are too clearly and definitely settled to admit of doubt or controversy at the present day.
The bond of Benjamin F. Hunt to Charles T. Brown was *194 due, and payable more than twenty years ante litem motam. And the question which- remainst to be considered, is a question of fact; namely, whether the obligor has distinctly admitted the continued existence of his obligation within the period of twenty years before the present owners of the bond have presented their claim to payment in this suit. To illustrate the judgment of the Court upon this question, it will be necessary for me to give a brief history of such portion of the facts of the case, elicited upon the trial, as bear upon this issue.
In the year 1825, Benjamin F. Hunt purchased from Charles T. Brown and wife, a plantation called Richfield, in Georgetown District, and one hundred and sixteen negroes, together with the stock on said plantation. The consideration was $120,000. Of this sum, $20,000 was paid in cash, or equivalents. To secure the payment of the remaining $100,000, Hunt executed to Charles T. Brown five bonds; each in the penal sum of $40,000 ; and each conditioned for the payment of $20,000, with interest payable annually, from the date of the bonds. The date of the bonds is the 11 February, A. D. 1825. To secure the payment of these bonds, with the accruing interest, Hunt executed to Brown, a mortgage of the Richfield plantation and the negroes purchased with it. The mortgage bore the same date with the bonds, and was duly registered. On one of these bonds; namely, that due the 11 February, 1826, is admitted to have been paid by Hunt, in some way not explained.
Charles T. Brown was indebted to the Branch Bank of the United States, in Charleston, in the sum of $18,500, by his note, on which William Smith was endorser. About the 14th June, 1826, Brown deposited with the Bank the four outstanding bonds of Hunt, as collateral security upon his debt to that institution. While the bonds were thus in the possession of the Bank, Brown being pressed by his creditors, entered into an arrangement with Hunt, for the prompt payment of his debt, in consideration of which prompt payment, Hunt was to have 20 per cent, discount. In pursuance of this agreement, Hunt as *195 sumed a debt of Brown to John H. Tucker, (the plaintiff,) amounting to $14,598 45 cents, for which he gave to Tucker five bonds, payable at different periods. This sum was applied to the bond payable the 11 February, 1827, and together with other payments and discounts, was in full satisfaction of said bond. The litigation arising upon this transaction, was the subject of a former decree of this Court.
In further fulfilment of the arrangement for prompt payment, Hunt was to pay, or to assume upon himself in discharge of Brown, the debt of the latter to the United States Bank of $ 18,500, secured by the indorsement of Wm. Smith, as before stated. To effect this part of the arrangement, Hunt gave his own note to the Bank, for the whole amount of Brown’s indebtedness, with the late William Matthews as his indorser; and thus Brown was discharged from that liability. While the bonds were still on deposit with the Bank, Brown, on the 6 October, 1828, assigned two of them to William Aiken; namely, the bond due on the 11 February, 1828, and the one due on the 11 February, 1829, for the consideration (as it is said) of $36,000. He also assigned to Aiken, at the same time, so much of the mortgage as was necessary to secure the payment of the said two bonds. On the 9 October, 1828, Brown assigned the remaining bond due 13rFebruary, 1830, and so much of the mortgage as was necessary to secure the payment thereof, to William Matthews, as collateral security for his indorsement of Hunt’s note to the Bank given in substitution of Brown’s debt, and also for his indorsement of another note of Hunt’s in Bank for $9,900 ; which latter note was further secured by the mortgage of other estates in Saint James, Santee. Whether the assignments to Aiken and Matthews are to be regarded as assignments in fact, or a re-issue by Hunt, of his bonds, I do not mean to insinuate an opinion. I am only discussing the question whether the bond assigned to Matthews is subject to the presumption of payment from the lapse of time. I state now only such of the facts as in my judgment are explanatoryfof, or pertinent to that issue.
*196 Matthews having become the assignee of the bond last due, made an assignment thereof without date to the Bank as collateral security on the note of $18,500. On 21 April, 1836, the two notes of Hunt endorsed by Matthews, previously kept in Bank by partial payments, and renewals, were protested for non-payment. And on the 10 June, 1837, the Bank of Charleston, which had succeeded to the assets of the Branch Bank of the United States, obtained separate judgments upon these notes against Hunt and Matthews, for the sum of $19,976 44 cents; and on the. 23 of November, 1837, lodged writs of fieri facias to enforce payment of the same.
The foregoing history is preliminary to the statement of a fact of great importance. It is a fact, which has a direct bearing upon the only issue which the Court is now considering, and deciding; and upon which it will turn. That issue, it. will be remembered, is whether the debt secured by the bond assigned to Matthews, is subject to the presumption of payment arising from the lapse of twenty years after it was due; or whether there be any rebutting circumstance to repel that presumption, which must otherwise necessarily arise.
The Act of Assembly of 1781,(a) gives to the Law Court jurisdiction to foreclose mortgages in certain cases where judgments have been recovered in that Court, upon debts secured by mortgage. The conditions upon which this jurisdiction is to be exercised by Law Courts, are, that the mortgagor must be still in possession, and that there are antecedent judgments, (one or more,) against the mortgagor, prior in date to that upon which proceedings in foreclosure are to be had, and posterior to the date of the mortgage.
The Bank of Charleston having obtained judgment against B. F. Hunt for $19,974 46, on his note endorsed by Matthews, as aforesaid, proceeded under the provisions of this Act, to foreclose the mortgage of Hunt given to secure the payment of the bond to Brown, which had been assigned to Matthews, and *197 by him assigned to the Bank, as collateral security upon the •note. In these proceedings, Hunt was duly notified according to the provisions of the Act, of the intended foreclosure ; and made default. Whereupon the Bank of Charleston, the plaintiffs in the cause, did actually obtain, in the year 1838, from the Law Court, an order for the foreclosure of the mortgage of the plantation called Richfield, and the negroes thereon subject to the mortgage. The order of foreclosure was never executed.
It has been objected, that this order for foreclosure at law was irregular and void. It was objectionable in onepointof view. The mortgage was not given to secure the payment of the debt upon which the judgment was recovered, but was given to secure the payment of the bond, which, together with the mortgage, was lodged and assigned .as collateral security to the note. The mortgagor did not covenant, that his lands and negroes should be subject to a lien for- the payment of the note, but for the amount due upon the bond. I think, that Hunt, upon this ground, might have made a successful defence against the proceedings for foreclosure. He might have said, “in hecfasdera non veni.” I have never agreed, that my lands and negroes should be subject to a lien, to secure the.payment of a debt upon which this judgment has been rendered. But he did net do this. He was duly notified, but made no defence. He suffered the order for foreclosure to go against him by default. Whether after this, the order for foreclosure was not valid and binding to all intents and purposes, is an entirely different question from that, which might-have been raised, but was not raised, during the progress of the proceedings.
I am of the opinion, that this judgment of foreclosure having been rendered, and standing unreversed, became valid and binding upon the mortgagor. In support of this view, it may be remarked, that the Court of Law had jurisdiction upon the subject matter; all the conditions existed upon which that jurisdiction was to be exercised; the proceedings were regular as to form ; the mortgagor was duly notified; and the Court rendered a formal judgment of foreclosure. And if the Court committed *198 an error as to a matter of fact, which might have caused a reversal of its judgment on appeal, it would constitute no ground afterwards for its being vacated, or for its being considered void and of none effect.
Here, then, was the judgment of a Court of competent jurisdiction for the foreclosure of the mortgage, in a proceeding in which Hunt was a party, and had regular notice. This occurred in the latter part of the year 1838, and may be considered a distinct and unequivocal admission by Hunt at that time of the existence of the debt; or at least of so much thereof as was equal to the sum recovered by the Bank in that cause. How would he have acted in these proceedings, if the debt secured by the mortgage had there been paid? How would any man have acted under similar circumstances ?
These proceedings at Law for the foreclosure of the mortgage, amount to more than an admission by Hunt, that the debt then existed. It is a solemn judgment of the Court to that effect, and conclusive upon him. He could not afterwards bring into issue a question of fact so formally adjudged. From this period, (Nov. 1838,) to the time when the legatees set up in these proceedings, their claim upon this bond and mortgage, not more than fourteen years have elapsed. It follows, as a matter of course, from what has already been said, and such is the opinion and judgment of this Court, that no presumption of the payment of the bond which has been assigned to William Matthews, can arise from the mere lapse of time, or from the lapse of time aided by other circumstances. The circuit decree which decides this question differently, must be reversed. No other question that arises in the case, but this, is intended to be concluded by this decree.
Whether this bond maynot have been satisfied by actual payments ; whether any, or how much of the bond remains due, -are questions which we do not meando decide, and upon which we express no opinion. The question as to actual payments, or set-offs by Hunt against Matthews, the Chancellor on circuit did not consider. Those matters in the present stage of the *199 proceedings, are not proper to be considered here. The facts are not before us. They must first be brought before, and considered by, a Court of original jurisdiction, with the aid of such instrumentalities as that Court affords.
In the mean time, the sale heretofore ordered, is not intended to be arrested, or delayed, but may go on according to the previous orders of the Court.
It is ordered and decreed, that the decree of the Circuit Court be reversed: and this decree upon the question herein decided, become' the judgment of the Court.
It is further ordered and decreed, that the case be remanded to the Circuit Court, to be there again tried upon all issues of law and fact which properly arise in the proceedings, except such as are herein decided.
Johnston and Dunkin, CC., concurred.

Decree reversed.

 5 Stat. 169.